ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
DOUGLAS M. MILLER (SBN: 240398)
Assistant United States Attorney
NICOLA J. MRAZEK
JEFFREY A. GOLDBERG
Senior Trial Attorneys
       1300 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone:  (213) 894-2216
       Facsimile:  (213) 894-6436
       Email: douglas.m.miller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                   UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 10-1031(A)-AHM |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE TO DEFENDANT |
| | ) | STEVE K. LEE'S MOTION TO SUPPRESS |
| v. | ) | HIS NOVEMBER 20, 2008 STATEMENT; |
| ENRIQUE FAUSTINO AGUILAR | ) | MEMORANDUM OF POINTS AND |
| NORIEGA, ANGELA MARIA | ) | AUTHORITIES; DECLARATION OF SPECIAL |
| GOMEZ AGUILAR, KEITH E. | ) | AGENT CHRISTOPHER DODSON |
| LINDSEY, STEVE K. LEE, and | ) | |
| LINDSEY MANUFACTURING | ) | Hearing: March 24, 2011, 9:30 a.m. |
| COMPANY, | ) | (Courtroom 14) |
| | ) | |
| Defendants. | ) | |
| | ) | |

        Plaintiff United States of America, by and through its

attorneys of record, the United States Department of Justice,

Criminal Division, Fraud Section, and the United States Attorney

for the Central District of California (collectively, "the

government"), hereby files its response to defendant STEVE K.

LEE's motion to suppress his November 20, 2008 statement

(Mot. #213).  The government's opposition is based upon the

attached memorandum of points and authorities, the attached

declaration of Special Agent Christopher Dodson, the files and records in this matter, as well as any evidence or argument presented at any hearing on this matter.

DATED:    March 10, 2011

                              Respectfully submitted,


                              ANDRÉ BIROTTE JR.
                              United States Attorney

                              ROBERT E. DUGDALE
                              Assistant United States Attorney
                              Chief, Criminal Division


                              _____/s/_____
                              DOUGLAS M. MILLER
                              Assistant United States Attorney

                              NICOLA J. MRAZEK
                              JEFFREY A. GOLDBERG
                              Senior Trial Attorneys
                              Criminal Division, Fraud Section

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . .  ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . .  1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . .  1

II.  LEE'S ASSERTED FACTS . . . . . . . . . . . . . . . . . . .  1

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .  3

        A.   LEE Was, as a Legal Matter, "Interrogated"  . . . . .  3

        B.   LEE Was Not "In Custody" . . . . . . . . . . . . . .  3

             1.   LEE Was Not "Summoned" by the Agents and
                  No Inappropriate Language Was Used . . . . . . .  6

             2.   LEE Was Never Confronted with Evidence of
                  Guilt . . . . . . . . . . . . . . . . . . . . .  7

             3.   LEE Was in Familiar Surroundings . . . . . . . .  8

             4.   The Duration of LEE's Interview Was Not
                  Excessive . . . . . . . . . . . . . . . . . . .  11

             5.   LEE Was Never Pressured . . . . . . . . . . . .  12

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .  14

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES:**                                                    **PAGE(S)**

3     <u>Berkemer v. McCarty</u>,
          468 U.S. 420 (1984) . . . . . . . . . . . . . . . . 3-4, 8
4
      <u>California v. Beheler</u>,
5         463 U.S. 1121 (1983) . . . . . . . . . . . . . . . . 3, 7

6     <u>Davis v. Allsbrooks</u>,
          778 F.2d 168 (4th Cir. 1985) . . . . . . . . . . . . 12
7
      <u>Miranda v. Arizona</u>,
8         384 U.S. 436 (1966) . . . . . . . . . . . . . . . passim

9     <u>Oregon v. Mathiason</u>,
          429 U.S. 492 (1977) . . . . . . . . . . . . . . . . . 3
10
      <u>Rhode Island v. Innis</u>,
11        446 U.S. 291 (1980) . . . . . . . . . . . . . . . . . 3

12    <u>United States v. Bassignani</u>,
          575 F.3d 879 (9th Cir. 2009) . . . . . . . . . . . 10-11
13
      <u>United States v. Beraun-Panez</u>,
14        812 F.2d 578 (9th Cir. 1987)
          830 F.2d 127 (9th Cir. 1987) . . . . . . . . . . . passim
15
      <u>United States v. Booth</u>,
16        669 F.2d 1231 (9th Cir. 1981) . . . . . . . . . . . 3-4

17    <u>United States v. Braxton</u>,
          112 F.3d 777 (4th Cir. 1997) . . . . . . . . . . . 4, 14
18
      <u>United States v. Craighead</u>,
19        539 F.3d 1073 (9th Cir. 2008) . . . . . . . . . . . 5, 8

20    <u>United States v. Gregory</u>,
          891 F.2d 732 (9th Cir. 1989) . . . . . . . . . . . . 13
21
      <u>United States v. Hargrove</u>,
22        625 F.3d 170 (4th Cir. 2010) . . . . . . . . . . . 5, 13

23    <u>United States v. Hayden</u>,
          260 F.3d 1062 (9th Cir. 2001) . . . . . . . . . . passim
24
      <u>United States v. Hudgens</u>,
25        798 F.2d 1234 (9th Cir. 1986) . . . . . . . . . . . 13

26    <u>United States v. Kim</u>,
          292 F.3d 969 (9th Cir. 2002) . . . . . . . . . . . passim

27

28                                  2

**TABLE OF AUTHORITIES (CONTINUED)**

**FEDERAL CASES:**                                                    **PAGE(S)**

United States v. Mittel-Carey,
     493 F.3d 36 (1st Cir. 2007) . . . . . . . . . . . . .   13

United States v. Norris,
     428 F.3d 907 (9th Cir. 2005) . . . . . . . . . . . 7-8, 12

United States v. Orman,
     486 F.3d 1170 (9th Cir. 2007) . . . . . . . . . . .   12

United States v. Redlightning,
     624 F.3d 1090 (9th Cir. 2010) . . . . . . . . . . .   13

United States v. Revels,
     510 F.3d 1269 (10th Cir. 2007) . . . . . . . . . . .   13

United States v. Ritchie,
     35 F.3d 1477 (10th Cir. 1994) . . . . . . . . . . . .  8

United States v. Wauneka,
     770 F.2d 1434 (9th Cir. 1985) . . . . . . . . . . . .  8

United States v. Woods,
     720 F.2d 1022 (9th Cir. 1983) . . . . . . . . . . .   10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

On November 20, 2008, the Federal Bureau of Investigation
("FBI") executed a search warrant at the offices of defendant
LINDSEY MANUFACTURING COMPANY ("LMC").  During the course of that
search, defendants KEITH E. LINDSEY and STEVE K. LEE were
interviewed separately by FBI agents and each made incriminating
statements.  LEE now moves to suppress his statement, arguing
that he was "in custody" and "interrogated" by the interviewing
agents and therefore should have received the warnings required
by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  This motion should
be denied.

**II.**

**LEE'S ASSERTED FACTS**

The November 20, 2008 search was executed by approximately
19 agents.[1]  According to LEE, when he arrived at LMC after the
search had begun and he was "stopped" by an agent, asked his
name, informed that he was one of the persons that the agents
wanted to interview, and directed to stay near his car and wait
for further instructions.  (Lee Decl. ¶¶ 3-4).  About 15 minutes

---

[1] LEE's repeated references in his memorandum — three times
in the first page alone — to the FBI agents being "armed and raid
jacket-clad" seems designed to influence the Court's decision by
conjuring up the image of a full-scale SWAT raid by agents
wearing body armor and carrying battering rams.  As defense
counsel undoubtedly knows, FBI agents executing search warrants
are required — for important safety reasons — to be armed and to
wear clothing identifying themselves as law enforcement officers.
In any event, there is no credible allegation here that an
unreasonably large number of agents were used to effectuate the
search, or that the agents acted unprofessionally.

later, two agents (most likely Special Agents Christopher Dodson and Bryan Willett) approached LEE and told him to accompany them inside LMC's offices.  (Id. ¶¶ 5-6).

Once inside LMC's office, the agents proceeded to walk LEE to his own personal office and then, according to LEE, the agents "sat" him in the chair closest to his desk.  (Id. ¶¶ 6-7).  The agents then "positioned themselves" between LEE and the door.  (Id. ¶ 7).  According to Agent Dodson, the interview lasted no more than one hour.  (Dodson Decl. ¶ 5).

Although LEE states that he was never given Miranda warnings, (Lee Decl. ¶¶ 8-11), LEE does not deny that the agents told him at the beginning of his interview that it would be voluntary and that he was free to terminate the interview at any time.  Nor does LEE dispute that he told the agents that he understood.  (See Mot. #213, Ex. B at 1).  Lastly, and perhaps most tellingly, LEE does not deny that at the end of the interview, he told the agents that although he wanted to continue to speak with them, he needed to end the interview in order to calm down LINDSEY's wife, Lela Lindsey.  (Id. at 4; Dodson Decl. ¶ 7).

2

### III.

### **ARGUMENT**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  In <u>Miranda</u>, the Supreme Court adopted prophylactic procedural measures to guarantee that a suspect is advised of his Fifth Amendment rights before a "custodial interrogation" is conducted.  384 U.S. at 444-45.

A.   <u>LEE Was, as a Legal Matter, "Interrogated"</u>

For the purposes of <u>Miranda</u>, "interrogation may be 'either express questioning or its functional equivalent,' and . . . include[s] any statements or actions 'that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"  <u>United States v. Booth</u>, 669 F.2d 1231, 1237 (9th Cir. 1981) (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980)).  Here, because LEE was expressly questioned, the government concedes that LEE's interview constituted — as a legal matter — an "interrogation."

B.   <u>LEE Was Not "in Custody"</u>

Notwithstanding the fact that LEE's interview constituted an "interrogation," his motion still fails because he was not "in custody."  The Supreme Court has stated that even when there is no formal arrest, a suspect will nevertheless be considered "in custody" for the purposes of <u>Miranda</u> if "[the] suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'"  <u>Berkemer v. McCarty</u>, 468 U.S. 420, 440 (1984) (quoting <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983)).  In <u>Oregon v.</u>

3

1   <u>Mathiason</u>, 429 U.S. 492 (1977), the Supreme Court explained as

2   follows:

3           Any interview of one suspected of a crime by
            a police officer will have coercive aspects
4           to it, simply by virtue of the fact that the
            police officer is part of a law enforcement
5           system which may ultimately cause the suspect
            to be charged with a crime.  But police
6           officers are not required to administer
            <u>Miranda</u> warnings to everyone whom they
7           question.  Nor is the requirement of warnings
            to be imposed simply because the questioning
8           takes place in the station house, or because
            the questioned person is one whom the police
9           suspect.  <u>Miranda</u> warnings are required only
            where there has been such a restriction on a
10          person's freedom as to render him "in
            custody."

11  <u>Id.</u> at 495.

12       The Ninth Circuit has further explained that "custody" will

13  be found if, based upon a review of all the pertinent facts, "a

14  reasonable person in such circumstances would conclude that after

15  brief questioning he or she would not be free to leave." <u>United

16  States v. Booth</u>, 669 F.2d 1231, 1235 (9th Cir. 1981).

17       Importantly, it makes no difference that LEE <u>now</u> claims that

18  he "did not feel that the interview was voluntary or that [he]

19  could leave." (Lee Decl. ¶ 13).  Not only is this after-the-fact

20  assertion contradicted by the undisputed facts, it is also

21  legally irrelevant because in determining whether a person "would

22  not be free to leave," the inquiry is objective, not subjective.

23  <u>See</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984); <u>United States

24  v. Braxton</u>, 112 F.3d 777, 781 (4th Cir. 1997) ("Subsequent

25  testimony by an accused about his prior subjective mental

26  impressions and reactions must be carefully scrutinized, as such

27

28                                  4

1  testimony is always influenced by his self-interest.") (internal

2  quotations and alterations omitted).

3       In performing this objective analysis, courts consider

4  "(1) the language used to summon the individual; (2) the extent

5  to which the defendant is confronted with evidence of guilt;

6  (3) the physical surroundings of the interrogation; (4) the

7  duration of the detention; and (5) the degree of pressure applied

8  to detain the individual." United States v. Hayden, 260 F.3d

9  1062, 1066 (9th Cir. 2001) (citing United States v. Beraun-Panez,

10 812 F.2d 578, 580 (9th Cir.), modified by 830 F.2d 127 (9th Cir.

11 1987)).  In this case, none of the factors listed above supports

12 a finding that LEE was "in custody."[2]

13 _____

14      [2] "Other factors may also be pertinent to, and even
   dispositive of, the ultimate determination [of] whether a
   reasonable person would have believed he could freely walk away
15 from the interrogators; the Beraun-Panez/Hayden factors are
   simply ones that recur frequently." United States v. Kim, 292
16 F.3d 969, 974 (9th Cir. 2002).  Indeed, in United States v.
   Craighead, 539 F.3d 1073 (9th Cir. 2008), the Ninth Circuit
17 identified four factors that should be considered when examining
   an in-home interrogation:

18
            (1) the number of law enforcement personnel
19          and whether they were armed; (2) whether the
            suspect was at any point restrained, either
20          by physical force or by threats; (3) whether
            the suspect was isolated from others; and
21          (4) whether the suspect was informed that he
            was free to leave or terminate the interview,
22          and the context in which any such statements
            were made.

23
   Id. at 1084.  As is evident, these considerations overlap
24 significantly with the Beraun-Panez/Hayden factors.  To the
   extent that this Court also considers "the number of law
25 enforcement personnel," LEE states that there were 19 agents
   executing the LMC search, but he acknowledges that only two
26 agents interviewed him.  See, e.g., United States v. Hargrove,
   625 F.3d 170, 179 (4th Cir. 2010) (defendant not in custody where
27 10-15 agents participated in execution of search warrant, but

28                                5

1.   <u>LEE Was Not "Summoned" by the Agents and No Inappropriate Language Was Used</u>

The first <u>Beraun-Panez/Hayden</u> factor to consider is the language used to summon the individual.  Here, LEE does not identify any language used by the agents that could be deemed inappropriate.  <u>Cf.</u> <u>United States v. Kim</u>, 292 F.3d 969, 975 (9th Cir. 2002) (finding of custody in part because the agents told defendant to "shut up").  Instead, LEE merely states that he was informed that he was one of the persons that the agents wanted to interview, and he was directed to stay near his car and wait for further instructions.

LEE also acknowledges that he went to LMC on November 20, 2008, not because he was contacted by the FBI and ordered to report to LMC, but rather because he was going to work.  LEE nonetheless maintains that, sometime after his arrival, he was "summoned" for an FBI interview.  In support of that argument, LEE cites the Ninth Circuit's observation in <u>Kim</u> that "[t]here is a critical distinction . . . between voluntarily entering one's own place of business without any intention to present oneself for a police interview, and voluntarily accompanying the police to their station upon request for the very purpose, <u>known in advance</u>, of answering their questions."  <u>Id.</u> at 974 (emphasis added).

But LEE's reliance on <u>Kim</u> is misplaced because LEE expressly states in his declaration that he was informed <u>before</u> he entered LMC's offices that the agents wanted to interview him: "When I

_____

only two agents interviewed defendant).

arrived at [LMC] . . . [an agent] told me I was on the law
enforcement list of people to be questioned." (Lee Decl. ¶¶ 3-
4). Therefore, even assuming LEE's version of events concerning
the circumstances of his arrival at LMC, it is clear that he
eventually "accompanied [the agents] <u>understanding that
questioning would ensue</u>." <u>Kim</u>, 292 F.3d at 974 (emphasis in
original) (citing <u>Beheler</u>, 463 U.S. at 1125 (1983) (holding that
defendant was not in custody when he agreed to accompany police
to the station to answer questions and was allowed to leave
immediately afterward)).[3]

    2.  <u>LEE Was Never Confronted with Evidence of Guilt</u>

    The second <u>Beraun-Panez/Hayden</u> factor to consider is the
extent to which the defendant is confronted with evidence of
guilt. Here, LEE merely asserts that his interview "was not a
friendly 'chat.'" (Mot. #213 at 6). But this allegation is
completely unsupported by his declaration, which says nothing
about how the interview was conducted. By contrast, Agent Dodson
states that the interview was at all times cordial, and no one —
including LEE — ever raised his voice. (Dodson Decl. ¶ 6). At
one point during the interview, LEE even laughed after answering
a question. (<u>Id.</u> ¶ 6). In any event, there is simply no
evidence that the agents who interviewed LEE "confronted him

---

[3] The only other case cited by LEE in support of his
"summoned" argument is <u>United States v. Norris</u>, 428 F.3d 907
(9th Cir. 2005). But that case undermines LEE's position because
not only did the Ninth Circuit conclude in <u>Norris</u> that the
defendant was <u>not</u> in custody, but the defendant in <u>Norris</u>, like
LEE in this case, <u>knew in advance</u> of accompanying the agents that
he was going to be interviewed. <u>See</u> <u>id.</u> at 910.

. . . with factual evidence contradicting his story" or "attempt[ed] to challenge [his] statements with other 'known facts' suggesting his guilt." <u>United States v. Norris</u>, 428 F.3d 907, 913 (9th Cir. 2005).[4]

    3.  <u>LEE Was in Familiar Surroundings</u>

    The third <u>Beraun-Panez/Hayden</u> factor to consider is the physical surroundings of the interrogation.  Here, LEE was interviewed in his own LMC office, which he concedes was "familiar territory."  (Mot. #213 at 7).  <u>See</u> <u>United States v. Ritchie</u>, 35 F.3d 1477, 1485 (10th Cir. 1994) ("Courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings.") (alterations and citation omitted).

    Nonetheless, LEE asserts in his motion papers (but not in his declaration) that his office "provided no comfort." (<u>Id.</u> at 7).  But again, LEE's subjective views are irrelevant, <u>see</u> <u>Berkemer</u>, 468 U.S. at 442, and therefore this Court should disregard them.  LEE's objective analysis is also flawed.  He

---

    [4] LEE makes other arguments in support of this factor but they have nothing to do with whether he was confronted with evidence of guilt.  For example, he contends that he was "questioned in a manner designed to elicit incriminating responses."  (Mot. #213 at 6).  But such an inquiry goes to whether a suspect has been "interrogated," <u>see</u> Part III.A., not to whether he was confronted with evidence of guilt to determine the issue of "custody."  LEE also cites <u>United States v. Craighead</u>, 539 F.3d 1073 (9th Cir. 2008), and <u>United States v. Wauneka</u>, 770 F.2d 1434 (9th Cir. 1985), in analyzing this factor. But it does not appear that there was any such confrontation in <u>Craighead</u>, and in <u>Wauneka</u>, the agents told the defendant, among other things, that he matched a description of the perpetrator. <u>See id.</u> at 1439.  No similar confrontation took place during LEE's interview.

8

relies exclusively on Beraun-Panez and Kim, but both cases are easily distinguishable.

In Beraun-Panez, the defendant was herding cattle in a remote and rural area when he was approached by two law enforcement officers who were driving a truck and investigating a fire. During the ensuing interrogation, the defendant was positioned between the two officers beside the hood of the truck. At one point, the defendant's co-worker approached and was intercepted by one of the officers, who sent the co-worker away. Based on these facts, the Ninth Circuit found that although the defendant was familiar with the area, the physical surroundings of the encounter favored a finding of "custody." 812 F.2d at 581-82.

In Kim, the defendant came to her own store because the police were at the store questioning her son. Immediately after she entered the business, the police locked the door, preventing her husband from entering. Once inside, she was directed to another area of the store and told to shut up. She was eventually interrogated in English (which she did not fully understand) while at least two officers sat and stood "around" her. 292 F.3d at 972. Although the Ninth Circuit did not make an explicit "physical surroundings" finding, based on these and other facts, the court ruled that the defendant was "in custody."

In this case, by contrast, LEE was not in a remote or rural area or in some unfamiliar part of his business, but rather in his own private office. LEE was also not positioned "between" the interviewing agents, nor were they standing and sitting

9

"around" him.  Moreover, the only person who approached LEE during his interview (Lela Lindsey) was not intercepted, but instead she entered LEE's office and began asking questions. (See L. Lindsey Decl. ¶ 3).  Finally, LEE was never told to "shut up," and he fully understands English.  See Kim, 292 F.3d at 977 ("[T]he coercive impact of enforced isolation is particularly strong where the defendant 'may have had some difficulty in understanding English.'") (quoting Beraun-Perez, 830 F.2d at 581)).[5]

Indeed, the Ninth Circuit in United States v. Bassignani, 575 F.3d 879 (9th Cir. 2009), a case involving an interview conducted of an employee while agents executed a search at his business, expressly distinguished Kim on a similar basis:

> Bassignani was interviewed at a conference room within his workplace — plainly a familiar environment.  There is no finding that the officers prevented anyone from coming or going during the interview. Indeed, several officers and [a co-worker] went in and out of the room.  Nothing in the record or in the recording of the interrogation indicates that Bassignani was "isolat[ed] . . . from the outside world," or prevented from contacting others.  Unlike Kim, it seems that Bassignani had a "complete understanding of the overall situation."

Id. at 885 (quoting Kim, 292 F.3d at 977); see also United States v. Woods, 720 F.2d 1022, 1029 (9th Cir. 1983) ("[E]ven though

---

[5] LEE makes much of the fact that the agents might have posted a sign outside of LEE's office indicating that an interview was in progress.  But this should be of little significance to the Court, as there is no evidence that LEE knew that such a sign had been posted.  Such signs are designed not to prevent access to or isolate an interviewee, but rather to alert other search agents so that they do not inadvertently enter the room and interrupt an ongoing interview.

10

one's freedom of action is inhibited to some degree during an investigatory detention, <u>Miranda</u> warnings need not be given prior to questioning.").

Lastly, LEE claims he was "positioned in a chair so that the agents blocked the door." (Mot. #213 at 3). To be clear, no one ever directed LEE to sit in any particular seat. (Dodson Decl. ¶ 3). Furthermore, LEE's "blocking" claim is undermined by a careful examination of his own photographic exhibit, which reveals that there was a clear path between LEE's seat and the door.[6] Lastly, if the agents really sought to block LEE's access to the door, the would have simply asked him to sit on the sofa.

### 4.   The Duration of LEE's Interview Was Not Excessive

The fourth <u>Beraun-Panez/Hayden</u> factor to consider is the duration of the detention. In this case, the duration of LEE's interview — no more than one hour — was not excessive, especially given that the discussion covered international business transactions that spanned several years.

To be sure, LEE's interview appears to have been longer than those found in some other cases to be "custodial." <u>See, e.g.</u>, <u>Kim</u>, 292 F.3d at 972 (only 45-90 minutes but in custody). Other Ninth Circuit decisions, however, reveal that the duration of the interview is not determinative. <u>See, e.g.</u>, <u>Bassignani</u>, 575 F.3d at 886 (two-and-a-half hours but <u>not</u> in custody); <u>Crawford</u>, 372 F.3d at 1052 ("more than one hour" but <u>not</u> in custody). It is

---

[6] The photograph seems to depict the door as being immediately next to an agent, but it appears that the door is open and the photographer is standing in the doorway. If so, that would make LEE's "blocking" claim even more unpersuasive.

11

clear, however, that LEE's meeting with the agents was by no means a "marathon session designed to force a confession," <u>Davis v. Allsbrooks</u>, 778 F.2d 168, 171 (4th Cir. 1985), especially in light of LEE's undisputed statement that he wanted to continue talking with the agents.

5.   <u>LEE Was Never Pressured</u>

The fifth <u>Beraun-Panez/Hayden</u> factor to consider is the degree of pressure applied to detain the individual.   Here, LEE contends that the agents did "all they could" to pressure LEE to answer questions.   (Mot. #213 at 7).   But like many of LEE's other assertions, this argument is long on rhetoric and short on supporting facts.

There is no dispute that at the beginning of the interview, LEE said that he understood his interview would be voluntary and that he understood he could stop at any time.   <u>See, e.g.</u>, <u>United States v. Norris</u>, 428 F.3d 907, 912 (9th Cir. 2005) (defendant was not in custody when "[h]e was told that his cooperation was voluntary and that he was free to terminate the interview at any time").   LEE's claim that he was never told that he was "free to leave," (Lee Decl. ¶ 12), is meaningless.   The agents effectively said as much when they told LEE that he was free to terminate the interview at any time.   Regardless, "[t]he absence of explicitly informing the person that he or she is free to leave is not a dispositive factor."   <u>United States v. Orman</u>, 486 F.3d 1170, 1176 (9th Cir. 2007).

12

Far from doing "all they could" to pressure LEE, the agents in this case (1) did <u>not</u> unholster or even display their weapons, <u>see</u> <u>United States v. Mittel-Carey</u>, 493 F.3d 36, 40 (1st Cir. 2007);[7] (2) did <u>not</u> handcuff LEE, pat him down, or otherwise restrain him, <u>see</u> <u>United States v. Hudgens</u>, 798 F.2d 1234, 1236 (9th Cir. 1986);[8] (3) did <u>not</u> place LEE face down on the floor, <u>see</u> <u>United States v. Revels</u>, 510 F.3d 1269, 1275 (10th Cir. 2007); (4) did <u>not</u> move LEE to a strange or isolated room and order him to shut up, <u>see</u> <u>Kim</u>, 292 F.3d at 971; and (5) did <u>not</u> subject LEE to "psychological restraints," <u>Beraun-Panez</u>, 812 F.2d at 580.  Instead, the agents engaged LEE in his own office, in a cordial and professional manner.

Lastly, LEE's current characterization of his encounter with the agents is belied by LEE's undisputed statement made at the end of his interview.  As noted previously, LEE said that he wanted to continue to speak with the agents, but that he needed to end the interview in order to calm down Lela Lindsey.  (Dodson Decl. ¶ 7).  If LEE's interview was really "coercive and aggressive," (Mot. #213 at 7), he would have never said that he wanted to continue.  <u>See, e.g.</u>, <u>United States v. Hargrove</u>, 625 F.3d 170, 177-82 (4th Cir. 2010) (holding that defendant who was interviewed in his residence during the execution of a search warrant was not in custody for the purposes of <u>Miranda</u>; court

---

[7] <u>Cf.</u> <u>United States v. Gregory</u>, 891 F.2d 732, 735 (9th Cir. 1989) (no finding of custody even though agents drew their guns).

[8] <u>Cf.</u> <u>United States v. Redlightning</u>, 624 F.3d 1090, 1103 (9th Cir. 2010) (no finding of custody during initial questioning even though agents conducted pat-down search).

noted, among other things, that defendant "never asked for the interview to end, never objected to any of the questions," and even "express[ed] interest" in continuing to assist the agents).[9]

\*       \*       \*

In summary, LEE was not "summoned" by the agents, no inappropriate language was used during the encounter, LEE was never confronted with evidence of guilt, LEE was in familiar surroundings, the duration of LEE's interview was not excessive, and LEE was never pressured.  Accordingly, although he was "interrogated" for the purposes of <u>Miranda</u>, he was never "in custody" and therefore there is no basis on which to suppress his voluntary statements.

**IV.**

**<u>CONCLUSION</u>**

For the foregoing reasons, LEE's motion to suppress his November 20, 2008 statement should be denied.

---

[9] This Court should reject any supplemental declaration submitted by LEE in reply in which he denies saying that he wanted to continue the interview.  The description of this statement in the FBI Form 302 (which LEE attached to his own motion) is conspicuous, and his failure to initially deny making it cannot be explained away as an oversight.  In any event, the believability of such an after-the-fact denial would be questionable at best.  <u>See</u> <u>United States v. Braxton</u>, 112 F.3d 777, 781 (4th Cir. 1997).