1 | JANET I. LEVINE (STATE BAR NO. 94255)
MARTINIQUE E. BUSINO (STATE BAR NO. 270795)
2 | Crowell & Moring LLP
515 South Flower Street, 40th Floor
3 | Los Angeles, California 90071-2258
Phone: (213) 622-4750
4 | Fax: (213) 622-2690
EMAIL: jlevine@crowell.com
5 | EMAIL: mbusino@crowell.com

6 | Attorneys for Defendant
Steve K. Lee
7

8 | JAN L. HANDZLIK
(STATE BAR NO. 47959)
THOMAS H. GODWIN
9 | (STATE BAR NO. 255384)
GREENBERG TRAURIG LLP
10 | 2450 Colorado Avenue, Suite 400 East
Santa Monica, Ca 90404
11 | Phone: (310) 586-6542
Fax: (310) 586-0542
12 | EMAIL: handzlikj@gtlaw.com
EMAIL: godwint@gtlaw.com
13

14 | Attorneys for Defendants Lindsey Manufacturing
Company and Keith E. Lindsey

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 10-1031(A)-AHM |
| Plaintiff, | **DEFENDANTS' REPLY TO GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO SUPPRESS SEARCH EVIDENCE (DOCKET NOS. 209, 210, AND 211)** |
| v. | |
| ENRIQUE FAUSTINO AGUILAR NORIEGA, ANGELA MARIA GOMEZ AGUILAR, LINDSEY MANUFACTURING COMPANY, KEITH E. LINDSEY and STEVE K. LEE, | Date: March 24, 2011 Time: 9:30 a.m. Place: Courtroom 14 |
| Defendants. | |

1      Defendants Lindsey Manufacturing Company, Keith E. Lindsey, and Steve

2  K. Lee, by their counsel of record, hereby submit their Reply to the Government's

3  Consolidated Opposition to the Defendants' Motions to Suppress Search Evidence

4  (Docket Nos. 209, 210, and 211).

5

6  DATED:  March 17, 2011          Respectfully submitted,

7                                  JANET I. LEVINE

8                                  CROWELL & MORING LLP

9

10                                  /s/ Janet I. Levine_____

11                                 By:  JANET I. LEVINE
                                   Attorneys for Defendant

12                                 Steve K. Lee

13

14  DATED:  March 17, 2011          Respectfully submitted,

15                                  JAN L. HANDZLIK

16                                  GREENBERG TRAURIG LLP

17

18                                  __/s/  Jan L. Handzlik_____

19                                 By: JAN L. HANDZLIK
                                   Attorneys for Defendants

20                                 Lindsey Manufacturing Company and
                                   Keith E. Lindsey

21

22

23

24

25

26

27

28

1    I.     **INTRODUCTION**

2          Defendants moved, in three separate motions, to suppress evidence seized in

3    the November 20, 2008 search of Lindsey Manufacturing Company ("LMC") and

4    Lindsey International ("LI") (collectively "Lindsey"), and obtained in searches of

5    Electronically Stored Information ("ESI") conducted that day and thereafter.  *See*

6    Defendants' Notice of Motion and Motion to Suppress Evidence Seized in

7    November 20, 2008 Search ("Suppression Motion One") (Docket No. 209);

8    Defendants' Notice of Motion and Motion to Suppress Evidence Seized as a Result

9    of Warrantless Searches ("Suppression Motion Two") (Docket No. 210);

10   Defendants' Notice of Motion and Motion to Suppress Evidence Obtained in

11   Searches and Seizures of Digital Devices and Data ("Suppression Motion Three")

12   (Docket No. 211).  As the moving papers establish, these searches lacked probable

13   cause, were overbroad and warrantless, violated the protocols set forth in the

14   warrant and, given the egregious and myriad Fourth Amendment violations, are not

15   saved by the "good faith" exception.[1]

16          In its consolidated opposition, the government misstates both the law and the

17   defendants' arguments as to why the evidence seized as a result of the searches of

18

19   ───────────────────

20   [1]     In footnote 3 of its opposition, the government claims that Dr. Lindsey only

21   has standing regarding the items seized from his office at Lindsey.  The

22   government cites to *United States v. SDI Future Health, Inc.*, 568 F.3d 684 (9th

     Cir. 2009), in support of this claim.  But, the facts here more closely resemble

23   *United States v. Gonzalez*, 412 F.3d 1102 (9th Cir. 2005), than *SDI*.  Like the

24   defendant in *Gonzalez*, Dr. Lindsey clearly shows he has standing to challenge the

     seizure of evidence or computers from the entire Lindsey premises.  Unlike the

25   defendants in *SDI*, Dr. Lindsey not only had ownership of the premises of his

26   family-run business, he exercised full access to all the buildings, as well as

     managerial control over the Lindsey's day-to-day operations.  Mr. Lee's standing

27   was addressed in the moving papers.  *See* Suppression Motion One at p. 6, n. 5;

28   Suppression Motion Two at p. 3, n. 2; Suppression Motion Three at p. 2, n. 2.

1    the Lindsey facilities and the ESI should be suppressed.  For the reasons set forth
2    herein and in the moving papers, the motion should be granted.

3    **II.    ARGUMENT**

4              A.    The Government Cannot Establish The Validity Of The November 14,
5                    2008 Warrant Nor The Legality Of The Warrantless Searches of
6                    Buildings 6 And 7

7                          1.    The government's reiteration of Agent Binder's affidavit still
8                                does not establish probable cause that any crime was committed

9              The government argues that Agent Farrell Binder's affidavit in support of
10   the various search warrants need only show a "fair probability" that it was
11   reasonable to search Lindsey for evidence of Foreign Corrupt Practices Act
12   ("FCPA") violations, and it contends it has done so.  Government's Response to
13   Defendants' Motions to Suppress Search Evidence ("Opp.") at pp. 13-18.  In
14   support of this contention, the government lists "several key facts" from Binder's
15   affidavit.[2]

16             But, the facts cited from Binder's affidavit highlight that the affidavit failed
17   to prove a crime in that it did not contain any evidence of a key element of an
18   FCPA violation.  Binder's affidavit points to a domestic concern (LMC)[3], a
19   "foreign official" (Nestor Moreno)[4], payments to the "foreign official" (purchase
20   of the luxury goods)[5], and business obtained as a result of the payments (LMC
21   contracts with the Comisión Federal de Electricidad ("CFE")).[6]  The affidavit

22   _____

23   [2]    Conspicuously absent from the government's list is Binder's "inadvertent"
24   and often repeated false statement that Lindsey made payments to Sorvill.
       [3]    See Binder Affidavit in support of Nov. 14, 2008 Search Warrant for
25   Lindsey Manufacturing and Lindsey International ("Binder Affidavit"), ¶ 23.
26   [4]    See Binder Affidavit, ¶ 26.
27   [5]    See Binder Affidavit, ¶ 27-42.
28   [6]    See Binder Affidavit, ¶ 43-45.

                       DEFENDANTS' REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS'
                                        MOTIONS TO SUPPRESS SEARCH EVIDENCE
                                                                3

addresses all elements of an FCPA violation, except the essential element which distinguishes legal conduct from illegal conduct – *intent*.[7]  Without facts showing that Lindsey (the only domestic concern in the search warrant), or its agents or employees, "willfully" and "corruptly" authorized payments, "knowing" that the money would be offered or given to Nestor Moreno, there was no "substantial basis" for a magistrate to conclude that Binder's affidavit established probable cause that the FCPA was violated.  At most, the affidavit established that the Aguilars purchased luxury goods for Nestor Moreno (referenced in the affidavit as the Aguilars' relative).

> ## 2.   The government admits it seized materials failing outside the warrant

Suppression Motion One sets forth language from the warrant that was overbroad.  *See* Suppression Motion One (Docket No. 209) at pp. 9-10.  The government claims that the warrant was not overbroad because the "other documents" language listed at the end of its request seeking "business records" must be read in the context of the "subject persons and entities" defined earlier in the same sentence.

Given the government's claim, the "other documents" catch-all language appears to modify the term "business record" and seizures under the warrant were limited to documents relating to the "subject persons and entities."  Thus, any

---

[7]   The government, citing *Zurcher v. Stanford Daily*, claims that the defense argued that the government must show that Lindsey or its employees committed a crime to justify the search of the Lindsey premises.  The defense made no such argument.  Rather, the defense argued that because it was the only "domestic concern" in the affidavit, failure to establish it had the necessary criminal intent was fatal to the government's claim that it has sufficiently shown an FCPA violation.  The *existence of a crime* and reason to believe *evidence of that crime will be at the place to be searched* are the basic requirements for the affidavit in support of a warrant.  *See* Suppression Motion One (Docket No. 209) at pp. 7-9.

1  seized documents that do not relate to the "subject persons and entities" are outside

2  the scope of the warrant.[8]

3        The government acknowledges that such seizures occurred. These illegal

4  seizures are not cured by the November 20, 2008 warrant, issued hours after these

5  materials were seized.[9] As such, all evidence seized outside of the warrant, and the

6  fruits thereof, must be suppressed. *See* Suppression Motion One at pp. 10-11.

7        3.    <u>Neither the "consent" allegedly received from Steven D.</u>

8              <u>Scholfield nor the November 20, 2008 warrant cured the</u>

9              <u>warrantless search of buildings 6 and 7</u>

10        The government claims that it could search buildings 6 and 7 without a

11  warrant because it obtained consent from Steven D. Scholfield and thought this

12  was valid because he was the Vice President of Operations.[10] Opp. at p. 19. The

13  government also claims that it will have Mr. Scholfield at the March 24, 2011,

14  hearing to so testify. In support of this contention, the government cites *United*

15  *States v. Gargiso*, 456 F.2d 584, 586-87 (2d Cir. 1971), a case where a consent

16  search was found valid when the FBI agents received consent from the "*highest-*

17  *ranking corporate officer on the scene*." Opp. at p. 20 (emphasis added). But the

18  government did not view Mr. Scholfield as such an important and "high-ranking"

19  employee since he was left off the government's interrogation list. The agents also

---

21  [8]    *See* Defendants' Exhibit D to Suppression Motion One (Docket No. 209) for
22  a list of these documents.

23  [9]    It also appears that there are some inaccuracies regarding the facts
24  describing the expansion of the items to be seized under the November 20, 2008
25  Search Warrant for Lindsey Manufacturing and Lindsey International. Opp. at pp.
    9-10.

26  [10]   The government does not seem to have produced any admissible evidence of
27  consent. Instead, it has submitted only the declaration of an agent who was not
    involved in obtaining the alleged consent. *See* Declaration of Gigi Joyner in
28  Support of Opp. at ¶ 2.

DEFENDANTS' REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTIONS TO SUPPRESS SEARCH EVIDENCE

5

1  knew that Dr. Lindsey (who was on the interrogation list) was the President of

2  Lindsey.  Yet, the government did not seek Dr. Lindsey's consent.  It also did not

3  seek Mr. Lee's consent or that of Mrs. Lindsey, an owner of Lindsey.

4       The government's claim that Mr. Scholfield had "apparent authority" to

5  consent is supported only by his title and a reference, without a single fact, to Mr.

6  Scholfield's "conduct at the scene."  Opp. at p. 20, lines 6-10.

7       The government also claims that while the searches of buildings 6 and 7

8  were warrantless, this is of no moment because the seizure of the documents from

9  these two buildings was inevitable.  Opp. at p. 20.  In support of this statement, the

10  government cites to Agent Binder getting the November 20, 2008 search warrant,

11  which included these two buildings.  But, the warrant was obtained hours after the

12  search concluded.  *See* Suppression Motion Two (Docket No. 210) at p. 3.

13       Also in support of this "inevitability" argument, the government cites to

14  *Murray v. United States*, 487 U.S. 533 (1988).  *Murray* does not support these

15  searches.  In *Murray*, the police officers illegally entered a warehouse without a

16  warrant, then left to get a search warrant immediately, before conducting any

17  further searches of the premises or seizing any evidence.  Unlike here, the police in

18  *Murray* did not rely on or refer to observations made during the illegal entry in its

19  search warrant application.  *Id*. at 535-36.  Binder's affidavit in support of the

20  November 20, 2008 search warrant *relied* on information *learned during the illegal*

21  *entry and searches of buildings 6 and 7* (which lasted several hours) and other

22  observations made during the search of other areas of the Lindsey premises.

23      B.   The ESI Searches Fail on Many Grounds

24       The defense moved to suppress evidence obtained in searches of ESI.  *See*

25  Suppression Motion Three (Docket No. 211).  As this motion established, the

26  searches of ESI were conducted outside the constraints of the Fourth Amendment,

27  and the protocols in the warrant were not observed.

28  ///

       DEFENDANTS' REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS'
                   MOTIONS TO SUPPRESS SEARCH EVIDENCE

1

        1.    <u>Imaging and searching are not synonyms</u>

2

     The government, in defense of a search that clearly violates the Fourth

3

Amendment, argues that it could legally "image" the ESI at Lindsey.  The

4

government also argues that it need not have complied with the Fourth

5

Amendment because its objectionable searches – in part – predated *United States v.*

6

*Comprehensive Drug Testing*, 579 F.3d 989 (9th Cir. 2009) (en banc), and *United*

7

*States v. Comprehensive Drug Testing*, 621 F.3d 1162 (9th Cir. 2010) (*en banc* and

8

*per curiam*), which only applied prospectively.[11]

9

     *Comprehensive Drug Testing* is the ESI child of *United States v. Tamura*,

10

694 F.2d 591 (9th Cir. 1982).  It did not change *Tamura*.  It simply and forcefully

11

reiterated that *Tamura* is the law in this circuit – even when ESI is searched – and

12

that when evidence is hopelessly intertwined with masses of unrelated materials,

13

the rights under the Fourth Amendment do not dissipate just because the items

14

seized and searched are ESI.

15

     Instead of focusing on this language from *Comprehensive Drug Testing* and

16

*Tamura*, the government argues at length that the "imaging" of all the data did not

17

render the search warrants unconstitutional.  However, the issue raised by the

18

defense is not the "imaging" of all the data, but the "searching" of the imaged data,

19

which the challenged warrant clearly allowed and which the agents clearly carried

20

out.

21

     Agent Moon, the agent entrusted to hold the ESI, allowed both case agents

22

to search the ESI.  *See* Declaration of Agent Moon in Support of Opp. ("Moon

23

-------------------------------------

24

[11]    The government cites to *United States v. Wilbur*, No. CR09-191 MJP, 2010

25

WL 519735, at \*16 (W.D. Wash. Feb. 4, 2010), as support for its statement that

26

*CDT* does not apply prospectively.  Significantly, in *Wilbur*, the searching agents complied with *Tamura* and *CDT*'s search protocols, "by using an agent who was

27

not part of the initial search to look for and segregate only that data which was within the scope of the search warrant for which there was probable cause." *Id.*

28

That was not done here.

Decl.") at ¶ 10.  He did not place any limits on their searches, nor did the warrant.  *See* Suppression Motion Three at pp. 9-10.  Clearly, these searches were in violation of *Tamura*.  As *Comprehensive Drug Testing* states, the Fourth Amendment has not been repealed, and it applies to searches of ESI.  *See Comprehensive Drug Testing*, 621 F.3d at 1177 (answering the District Court's question: "what ever happened to the Fourth Amendment? Was it . . . repealed somehow?" with a resounding, "No.").

> 2.   The Court's order requiring a stipulation or court order 60 days
>      after the search is not satisfied by obtaining a new warrant two
>      years later

The moving papers established that the government failed to comply with the dictates of the November 2008 warrants requiring the government to seek either a stipulation from the defendants or a court order if it intended to keep the digital devices seized, or the images of those devices, for more than 60 days.  In response, the government argues that was only required to "review[] the seized images for data falling within the items to be seized within 60 days," which it did, and no other time limitations were imposed on the government regarding when it would seek an order allowing the government to retain the digital devices.  Opp. at p. 24, line 9 through p. 25, line 6.

The opposition, and its reliance on Agent Moon's statement about what he thought the search warrant protocols required, ignores the clear language of the warrant.  *See* Moon Decl. at ¶ 9.  In fact, Moon's declaration does not address the clear directive in the warrant.  The warrant required *either* a *stipulation* or a *court order* 60 days after search to maintain the ESI in government possession.  Neither was obtained.  Binder's application for a new warrant in August 2010 did not cure the violation of these protocols, nor did the court order obtained in December 2010.  Therefore, all searches of ESI, and the fruits thereof, must be suppressed.

///

1    C.    The "Good Faith" Exception Does Not Apply

2         The government's argument for the application of the "good faith" exception

3    also fails.  "Good faith" does not apply to searches beyond the warrant, which

4    occurred here, both with the ESI searches and documents seized on November 20,

5    2008.  "Good faith" also does not apply to "bare bones" affidavits.  Any well-

6    trained officer would know that knowledge and intent are essential to the

7    establishment of an FCPA or related crime.  *See generally United States v. Leon*,

8    468 U.S. 897, 914-23 (1984).  These key elements were missing from Binder's

9    affidavit, and this crippling deficiency is not saved by "good faith."  Also, the

10   searches of the ESI are based on a warrant which clearly authorized a general

11   search, and do not fall within the "good faith" exception.

12   **IV.    CONCLUSION**

13        Given the lack of probable cause, the seizure of items outside the warrant,

14   the warrantless search of two buildings, the "general search" of ESI, and the fact

15   these warrants cannot be saved by the "good faith" exception, the Court should

16   suppress all the evidence seized during the searches of Lindsey on November 20,

17   2008 and the subsequent searches of ESI seized that day.

18   DATED:  March 17, 2011          Respectfully submitted,

19                                   JANET I. LEVINE
                                     CROWELL & MORING LLP
20
                                      /s/ Janet I. Levine
21                                   By:  JANET I. LEVINE
                                     Attorneys for Defendant
22                                   Steve K. Lee

23
     DATED:  March 17, 2011          Respectfully submitted,
24
                                     JAN L. HANDZLIK
25                                   GREENBERG TRAURIG LLP

26                                    /s/  Jan L. Handzlik
                                     By: JAN L. HANDZLIK
27                                   Attorneys for Defendants
                                     Lindsey Manufacturing Company and
28                                   Keith E. Lindsey

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, at Crowell & Moring LLP at 515 S. Flower Street, 40th Floor, Los Angeles, California  90071. I am over the age of 18 and not a party to the within action.

On **March 17, 2011**, I served the foregoing document described as **DEFENDANTS' REPLY TO GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO SUPPRESS SEARCH EVIDENCE (DOCKET NOS. 209, 210, AND 211)** on the parties in this action by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies the following:

Douglas M. Miller (Assistant United States Attorney)
Email: doug.miller@usdoj.gov

Nicola J. Mrazek (United States Department of Justice Senior Trial Attorney)
Email: nicola.mrazek@usdoj.gov

Jeffrey Goldberg (United States Department of Justice Senior Trial Attorney)
Email: jeffrey.goldberg2@ usdoj.gov

Jan L. Handzlik (Attorney for Defendants Lindsey Manufacturing Company and Keith E. Lindsey)
Email: handzlikj@gtlaw.com
Email: godwint@gtlaw.com

Stephen G. Larson (Attorney for Defendant Angela Maria Gomez Aguilar)
Email: slarson@girardikeese.com
Email: mweber@girardikeese.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **March 17, 2011**, at Los Angeles, California.

___/s/ Kristen Savage Garcia_____
KRISTEN SAVAGE GARCIA