GIRARDI | KEESE LLP
Stephen G. Larson (CA Bar No. 145225)
Molly B. Weber (CA Bar No. 271279)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Phone: 213-977-0211
Fax: 213-481-1554
E- Mail: slarson@girardikeese.com
E- Mail: mweber@girardikeese.com

Attorneys for Defendant
Angela Maria Gomez Aguilar

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>   v.<br><br>ENRIQUE FAUSTINO AGUILAR NORIEGA, ANGELA MARIA GOMEZ AGUILAR, LINDSEY MANUFACTURING COMPANY, KEITH E. LINDSEY, and STEVE K. LEE,<br><br>            Defendants. | CR No. 10-1031-AHM<br><br>**DEFENDANT ANGELA MARIA GOMEZ AGUILAR'S MOTION FOR A JUDGMENT OF ACQUITTAL AFTER THE VERDICT; MEMORANDUM OF POINTS AND AUTHORITIES** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant ANGELA MARIA GOMEZ AGUILAR hereby files this Motion for an order entering a judgment of acquittal on count seven, conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h), the sole count for which she was convicted at trial.   As set forth below, there is insufficient evidence to sustain a conviction under count seven, and the jury's verdict should be vacated and a judgment of acquittal entered pursuant to the Court's authority under Federal Rule of Criminal Procedure 29.

1      This motion is based on the attached memorandum of points and authorities, the

2 evidence presented at trial, and on such further argument and evidence as may be

3 adduced at the hearing on this matter.

4

5 DATED: May 24, 2011       Respectfully submitted,

6

7       By:               /s/

8           Stephen G. Larson

9           GIRARDI | KEESE

            Attorneys for Defendant

10           ANGELA MARIA GOMEZ AGUILAR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT MS. GOMEZ AGUILAR'S MOTION       2
FOR A JUDGEMENT OF ACQUITTAL AFTER
THE VERDICT [RULE 29]                               13198342.2

1

2

## **MEMORANDUM OF POINTS AND AUTHORITIES**

3

4

## **A.    INTRODUCTION AND LEGAL STANDARD**

5

6        Defendant Angela Aguilar moves this Court for an order entering a judgment of

acquittal on count seven, conspiracy to commit money laundering, because there is

7
insufficient evidence to sustain the conviction pursuant to Federal Rule of Criminal

8
Procedure 29, subdivisions (a) and (b).  First, there is insufficient evidence that Mrs.

9
Aguilar *willfully* participated in a criminal conspiracy with the *specific intent* to

10
commit money laundering.  Second, the circumstantial evidence of innocence was just

11
as strong as the circumstantial evidence of guilt, and the jury had no non-speculative

12
basis in the evidence for choosing the latter over the former.

13        Rule 29(a) provides, in pertinent part, as follows:

14                 After the government closes its evidence or after the

15                 close of all the evidence, the court on the defendant's

16                 motion must enter a judgment of acquittal of any offense

17                 for which the evidence is insufficient to sustain a

18                 conviction.

19        Sufficiency of the evidence is reviewed to determine "whether, after viewing the

20
evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime <u>beyond a reasonable doubt</u>."  <u>Jackson v.

21
Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis added).  A verdict must be set aside if

22
"there are not sufficient probative facts from which a fact-finder, <u>applying the beyond a

23
reasonable doubt standard</u>, could rationally choose the hypothesis that supports a

24
finding of guilt rather than the hypotheses that are consistent with innocence."  <u>United

25
States v Lopez-Alvarez</u>, 970 F2d 583, 589 (9th Cir 1992) (emphasis added).   Thus, in

26
order to sustain a conviction, there must be relevant evidence from which the jury could

27
reasonably find the defendant guilty beyond a reasonable doubt.  <u>United States v. Price</u>,

28

DEFENDANT MS. GOMEZ AGUILAR'S MOTION       - 1 -
FOR A JUDGEMENT OF ACQUITTAL AFTER THE
VERDICT [RULE 29]

13198342.2

1   623 F.2d 587, 591-92 (9th Cir. 1980), overruled on other grounds, United States v. De

2   Bright, 730 F.2d 1255 (9th Cir.1984).

3       A court should not uphold a conviction, as is the case here, that was obtained by

4   nothing more than "piling inference upon inference," United States v. Fox, 902 F.2d

5   1508, 1513 (10th Cir. 1990), or "where the evidence raises no more than a mere

6   suspicion of guilt."  United States v. Rahseparian, 231 F.3d 1257, 1262 (10th Cir. 2000)

7   (citation omitted).  "[W]hen the prosecution's case, or any essential element of it, is

8   built on circumstantial evidence, the role of the trial judge (and of the appellate court on

9   review) in passing on the sufficiency of the evidence becomes much more significant."

10  26 MOORE'S FED. PRACTICE, Criminal Procedure § 629.05, Determination of Sufficiency

11  of Evidence (2011); see also Goldstein, *The State and the Accused: Balance and*

12  *Advantage in Criminal Procedure*, 69 Yale L. J. 1149, 1156 (1960).

13      While there is no disputing that, on a Rule 29 motion, credibility doubts are to be

14  resolved in the government's favor, "a reasonable basis" must still exist in the record in

15  order to sustain the jury's verdict.  See United States v. Galati, 230 F.3d 254, 258 (7th

16  Cir. 2000).  Where the case does not revolve around conflicts in testimony, which is the

17  case here, the quantum of government's evidence must still be assessed to ensure that

18  this reasonable basis exists in the record.  See United States v. Bowie, 892 F.2d 1494,

19  1497 (10th Cir. 1990) ("The test is: on the basis of the whole record, 'the evidence –

20  both direct and circumstantial, together with the *reasonable inferences* to be drawn

21  therefrom – is sufficient if, when taken in the light most favorable to the government, a

22  reasonable jury could find the defendant guilty beyond a reasonable doubt.'")

23      The Ninth Circuit has recognized that, even when the evidence and all reasonable

24  inferences to be made there from are construed in favor of the government, it may still

25  "be insufficient to establish every element of the crime." United States v. Nevils, 598

26  F.3d 1158, 1167 (9th Cir. 2010) (en banc).  The Nevils court held that "evidence is

27  insufficient to support a verdict where mere speculation, rather than reasonable

28

inference, supports the government's case, see Juan H. v. Allen, 408 F.3d 1262, 1277-79 (9th Cir. 2005), or where there is a 'total failure of proof of [a] requisite' element, Briceno v. Scribner, 555 F.3d 1069, 1079 (9th Cir. 2009)." Id.

As Justice Stewart wrote for the Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979):

> The practice in the federal courts of entertaining properly preserved challenges to evidentiary sufficiency [under Rule 29] serves only to highlight the traditional understanding in our system that the application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion. To be sure, the fact finder in a criminal case has traditionally been permitted to enter an unassailable but unreasonable verdict of "not guilty." This is the logical corollary of the rule that there can be no appeal from a judgment of acquittal, even if the evidence of guilt is overwhelming. The power of the fact finder to err upon the side of mercy, however, has never been thought to include a power to enter an unreasonable verdict of guilty. … Any such premise is wholly belied by the settled practice of testing evidentiary sufficiency through a motion for judgment of acquittal and a post-verdict appeal from the denial of such a motion.

443 U.S. 307, 317 n. 10 (1979).

Even after construing the evidence in the light most favorable to the prosecution, a court must then evaluate whether any rational trier of fact could have returned a guilty verdict. "This second step protects against [the] rare occasions in which a properly

instructed jury may convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." Nevils, 598 F.3d at 1164. "At this second step, [the reviewing court] must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt <u>fails to establish every element of the crime</u> beyond a reasonable doubt." Id. at 1165 (emphasis added). For the reasons set forth below, defendant Aguilar submits that, clearly, the circumstantial evidence adduced at trial fails to establish either element of the money laundering conspiracy charge.

**B.    INSUFFICIENT EVIDENCE SUPPORTS THE CONVICTION**

With all due respect to the dedicated service provided by the jury, it is disconcerting and disheartening to Mrs. Aguilar that, after more than five weeks in a trial involving complicated testimony from 25 witnesses, and evidence presented by the government in a manner that this Court repeatedly characterized as "beyond confusing" and a "total mess," the jury returned a verdict in less than one full day of deliberation. This, after the jury was given its charge and more than 50 pages of jury instructions and hundreds of exhibits containing thousands of pages of documents. The haste with which the jury acted in returning a verdict over a wide swath of different counts with separate underlying factual predicates makes it particularly critical for this Court to scrutinize the evidence and evaluate the propriety of the conviction with care.

For purposes of this motion, Mrs. Aguilar acknowledges that it is not implausible for a jury to have found that she conducted a financial transaction of more than $10,000 using criminally-derived proceeds.[1] As the government argued in its closing (and in its

---

[1]    This is a reference to the Section 1957 object of the conspiracy, which is the easiest of the three money laundering objects for the government to prove. In light of the Court's granting a Rule 29 motion of insufficiency of evidence on count eight for the lack of sufficient evidence to establish any specific intent to <u>conceal</u> the

*(Footnote continued on next page)*

1   earlier opposition to Mrs. Aguilar's pre-verdict Rule 29 motion), such a finding

2   circumstantially derives from stitching together five inferences:  That Mrs. Aguilar

3   knew what her husband did for a living; that she knew that the proceeds entering the

4   Grupo account came from businesses in the United States doing business with CFE; that

5   she knew Nestor Moreno was a governmental official who worked with CFE; that she

6   knew about the transactions providing benefits to Nestor Moreno that she signed (the

7   Ferrari check, the yacht check, the American Express authorizations, etc.); and that she

8   knew that she had sole signatory control over the Grupo account that paid for these

9   benefits.  Treating these facts as true (regardless, as the Court certainly is aware, of the

10  profound weakness of the evidence supporting them individually and collectively), a

11  jury could infer that she <u>knew</u> about the transactions in question and that, further, she

12  may have suspected that the transactions involved monies that were from a criminally

13  derived source (although not necessarily, as is required by Section 1956(c)(1), from

14  "activity that constitutes a felony under State, Federal or foreign law").

15          But this still poses two significant problems for the government:

16          First, Section 1957 money laundering is not the count of conviction; rather, the

17  count of conviction, criminal money laundering conspiracy under Section 1956(h),

18  requires the government to prove that defendant willfully (that is, purposefully, not just

19  knowingly) entered into an agreement with another person (in this case, Mrs. Aguilar's

20  husband, Enrique Aguilar) with the (specific) intent to commit an offense, in this case

21  money laundering.  For that particular offense – a willful agreement intending to

22  commit money laundering – there is simply no evidence, direct or circumstantial.

23  _____

24  *(Footnote continued from previous page)*
        transactions as required under Section 1956(a)(1)(B)(i), and by logical extension the
25      insufficiency of evidence of any specific intent to <u>promote</u> the transactions as
        required under Section 1956(a)(2)(A), the Section 1957 object is the only object that
26      the jury could have found.

27

28

1    Second, and perhaps more importantly, the inference that Mrs. Aguilar knowingly

2 committed Section 1957 money laundering (which, again, is not the crime charged but

3 merely the object of the conspiracy) is no more plausible than other inferences that

4 could just as reasonably be drawn from the evidence, and it was pure speculation for the

5 jury to draw the inference of guilt rather than innocence.

6

7       **1.    There is Insufficient Evidence that Mrs. Aguilar Willfully**

8            **Participated in a Conspiracy with the Intention to Commit**
            **Money Laundering.**

9

10    In order to have validly convicted Mrs. Aguilar for participating in a money

11 laundering scheme through a conspiracy as actually alleged in count seven, there must

12 have been evidence beyond a reasonable doubt that (1) Mrs. Aguilar willfully entered

13 into an agreement to accomplish an illegal objective; and (2) Mrs. Aguilar intended to

14 commit the underlying substantive offense. See United States v. Sadighi, 1999 U.S.

15 App. LEXIS 27994 at *3 (9th Cir. Oct. 5, 1999), citing United States v. Yossunthorn,

16 167 F.3d 1267, 1270 (9th Cir. 1999).  In a nutshell, Mrs. Aguilar's submits that the

17 evidence does not support a finding that she did either:  Even assuming that the financial

18 transactions that are the subject of the money laundering allegations (that is, the

19 payments for the Ferrari, the yacht, the American Express card, and the two wire

20 transfers to the Hernandezes) were knowingly conducted by her (which, as set forth

21 below, is all that the government essentially argued in its closing, and which Mrs.

22 Aguilar will assume for purposes of this motion), and even further assuming that she

23 had reason to believe that these financial transactions were "fishy" or "suspicious," (as

24 Mr. Goldberg stated, "[i]t's so fishy, you can smell it from a long ways away" (RT

25 4162)), there is insufficient evidence, direct or circumstantial, to support a finding,

26 beyond a reasonable doubt, that she willfully entered into an agreement to accomplish

27

28   DEFENDANT MS. GOMEZ AGUILAR'S MOTION          6                          13198342.2
     FOR A JUDGEMENT OF ACQUITTAL AFTER
     THE VERDICT [RULE 29]

an illegal objective, or that, in doing so, she <u>intended</u> to commit the underlying substantive offense, namely money laundering.  In sum, the government has improperly conflated the requirement that she acted knowingly to be convicted of a Section 1957 money laundering offense, with which she is not charged, with the requirement that she willfully and with a specific intent enter into a criminal conspiracy, with which she is charged and was wrongfully convicted.

"[T]he government may not convict a defendant of conspiracy merely by showing [her] connection, albeit unwitting, to the unlawful agreement.  Rather, the government must also prove beyond a reasonable doubt that the defendant knew of [her] connection to the conspiracy charged by the government." <u>United States v. Smith</u>, 609 F.2d 1294, 1299 (9th Cir. 1979), explaining <u>United States v. Baxter</u>, 492 F.2d 150 (9th Cir. 1973). Thus, the jury must be able to reasonably find evidence, beyond a reasonable doubt, that Mrs. Aguilar had the requisite <u>willful</u> intent to join the conspiracy with her husband, along with a secondary intent to actually commit money laundering.  "Money laundering and conspiracy are both specific intent crimes." <u>United States v. Lazarenko</u>, 2003 U.S. Dist. LEXIS 25940 at *10 (N.D. Cal. Sept. 10, 2003) (citing <u>Rahseparian</u>, 231 F.3d at 1261); <u>United States v. Blair</u>, 54 F.3d 639, 642 (10th Cir. 1995) (conspiracy requires specific intent to further the unlawful activity which is the object of the conspiracy).

The government, as it did when arguing against Mrs. Aguilar's first Rule 29 motion focused on the Section 1956 money laundering contained in count eight, is improperly attempting to use <u>how</u> the transactions were conducted to prove <u>why</u> they were conducted.  Just as the U.S. Supreme Court found in <u>Cuellar v. United States</u>, 553 U.S. 550 (2008) – that a specific intent "designed to conceal" element cannot be established solely by evidence that the defendant "concealed the funds in transport" –

1   so, too, is it improper for a jury to find a "willful" participation and "intent to commit"

2   elements as being established solely by evidence that the defendant conducted herself in

3   a manner consistent with such participation or the offense itself. As the Supreme Court

4   recognized in its unanimous decision, there is an important distinction to be made

5   between inferences regarding "*how* one moves money" vs. "*why* one moves money." Id.

6   at 566; see also, United States v. Simon, 2008 U.S. Dist. LEXIS 94978 at *6-7 (N.D.

7   Cal. Nov. 12, 2008), affirmed at 2010 U.S. App. LEXIS 10747 at *6 (9th Cir. May 26,

8   2010) (the Court granted the defendants Rule 29 Motion for Acquittal upon finding

9   there was "no evidence from which a reasonable jury could determine beyond a

10  reasonable doubt that the Defendants' intent, in whole or in part, was to transfer the

11  money in order to conceal or disguise its location, ownership or control.").

12      The focus of the dual intent elements for a conspiracy charge must be on the

13  defendant's purpose and intent, not defendant's conduct, and it is evidence of purpose

14  and intent (circumstantial or direct), as opposed to knowingly conducting certain acts,

15  that is and from day one has been utterly lacking in the government's case.

16  Not once did the government in its closing argument or rebuttal argument even allude to

17  evidence that Mrs. Aguilar willfully participated in a conspiracy with her husband, or

18  intended to commit a money laundering offense; rather, all of the argument focused on

19  individual acts that suggest that she did something or had knowledge of something, not

20  why or for what purpose she did it. Mr. Goldberg argued that Mrs. Aguilar "played an

21  important role by concealing this bribery through helping launder proceeds" (RT 4158),

22  and went on to describe what Mrs. Aguilar "knew" – that she knew that Nestor Moreno

23  was a CFE official (RT 4158-59); that she knew that her husband did business with CFE

24  and Nestor Moreno (RT 4160) ("If Cerdan knows that, it's no great leap to say that

25  Angela Aguilar knows that"); that she knew that the source of the money in the Grupo

26  account would be coming from businesses that were doing business with CFE (RT

27

28

4162); that she knew that the Grupo account was "funded" (RT 4163); that she knew that she was the sole signatory on the Grupo account (RT 4165); that she knew that Grupo's business address was 441 Rio Sena (RT 4166); and that she knew that benefits from the account were being paid to Nestor Moreno (RT 4167).

Confusingly, Mr. Miller, in his rebuttal, appeared to concede that Mrs. Aguilar "didn't know about what was going on back at LMC, or what we submit is the foreign corrupt practices violation between Enrique Aguilar, and Steve Lee, and Keith Lindsey, that's not the point. That only has to do with the money, and the government has established that. All of the money in the Grupo account that Angela was using, or signing off on, was money that was coming from Lindsey Manufacturing Company. And we submit that we've proven to you that money was paid as a bribe. And that's the violation. So don't – you don't have to find that Angela knew that side of it. The knowledge elements come up later." (RT 4325). Mr. Miller then proceeded to address the "knowledge element" by focusing on what he characterized as evidence of concealment, which, as the Court already found in granting the pre-verdict Rule 29 motion with respect to count eight, was not evidence of purposeful concealment at all but rather evidence of conduct. Mr. Miller proceeded to recap, as Mr. Goldberg had done in his closing argument, what Mrs. Aguilar purportedly "knew," and summed up the evidence as being "indicative of [Mrs. Aguilar's] knowledge." (RT 4332).

But that's it, and knowledge and willfulness are decidedly not the same thing.

Accepting all of that as true, as the defense must for purposes of this motion, establishes, at best, that Mrs. Aguilar knowingly conducted certain financial transactions as alleged; it does not, in any way, let alone beyond a reasonable doubt, establish whether she entered into an agreement with her husband willfully or whether she entered such an agreement with the intention (as opposed to some vague or partial knowledge) of promoting money laundering.

1    The fact is, there is no such evidence (apart from the financial transactions in

2    which, for purposes of this motion, Mrs. Aguilar knowingly engaged), and certainly not

3    evidence capable of establishing the culpable purpose or intent beyond a reasonable

4    doubt.  In contrast to the other defendants (and in particular co-defendant Enrique

5    Aguilar), there was not one e-mail, not one piece of correspondence, not one testimonial

6    that supported, directly or circumstantially, the inference that Mrs. Aguilar's

7    participation in the conspiracy was willful or that her commission of the money

8    laundering offense was intended.  "[T]here can be no conviction for guilt by association,

9    and it is clear that mere association with members of a conspiracy, the existence of an

10   opportunity to join a conspiracy, or simple knowledge, approval of, or acquiescence in

11   the object or purpose of the conspiracy, <u>without an intention and agreement to</u>

12   <u>accomplish a specific illegal objective,</u> is not sufficient to make one a conspirator."

13   <u>United States v. Melchor-Lopez,</u> 627 F.2d 886, 891 (9th Cir. 1980) (citations omitted)

14   (emphasis added).  And just as there can be no guilt by association, there can be no guilt

15   by marriage or stereotypical assumption that one's spouse "must have known" – the

16   government has failed to point "to any evidence in this record from which it could be

17   inferred beyond a reasonable doubt that" defendant willfully conspired with the intent to

18   launder money.  <u>Cuellar,</u> 553 U.S. at 570.

19

20           **2.  <u>Both a Theory of Guilt and a Theory of Innocence are Supported by</u>**
              **<u>the Evidence.</u>**

21

22           The second problem for the government is that the circumstantial evidence just as

23   likely supports a theory of innocence as it does guilt.  Perhaps Mrs. Aguilar willfully

24   participated in an agreement intending to launder money:  Maybe she and her husband

25   discussed a scheme or plan to open up an account in her name to receive funds from U.S.

26   businesses with whom her husband did business, and then, years later, use the proceeds

27

28   DEFENDANT MS. GOMEZ AGUILAR'S MOTION        10
     FOR A JUDGEMENT OF ACQUITTAL AFTER
     THE VERDICT [RULE 29]                                                    13198342.2

1  in that account to bribe Mexican officials in order to secure contracts for her husband's

2  clients. However, the evidence would also support a finding that no such plan existed,

3  or if it did, its purpose and intent were wholly unrelated to the allegations set forth in the

4  indictment. Moreover, the guilty inferences urged by the government are so broadly

5  drawn that it would tend to ensnare the day-to-day activities of almost any spouse or

6  domestic partner.

7        There are any number of reasonably plausible alternatives to the government's

8  speculative version. Perhaps Mrs. Aguilar knowingly opened up the account in question

9  (in her name, using her valid passport as identification), but for the purpose and with the

10  intention that it would be a vehicle for her (or her daughter Angie) to receive proceeds

11  from her husband's business and investments (which he completely controlled) in case

12  something happened to him. Perhaps there were other, less-admirable purposes of the

13  arrangement – to evade domestic or foreign taxes, to avoid domestic or foreign

14  regulations, to cut out other possible heirs, to defraud business partners, none of which

15  is properly a basis for conviction in this case. Or, perhaps, as the Court itself

16  speculated at the pre-verdict Rule 29 hearing, the whole scheme was designed to

17  respond to acts of extortion by Nestor Moreno or someone else, that the payments in

18  question were not designed to bribe anyone but to avoid some dark secret from being

19  revealed. In such an instance, perhaps Mrs. Aguilar was aware of what the purpose of

20  the whole scheme was designed to achieve, but even if it were about extortion and not

21  bribery, the evidence at this trial sheds no light upon what, in fact, Mrs. Aguilar

22  willfully did or did not do, or what she intended or did not intend.

23        Certainly the evidence at trial established that the day-to-day control of the

24  account was in the hands of Enrique Aguilar – even assuming that Mrs. Aguilar signed

25  everything that the government purports – and that Enrique Aguilar used the account as

26  he saw fit. However, these facts underscore, and in no way contradict, that there is

27

28

insufficient evidence to find that Mrs. Aguilar necessarily intended anything in particular by opening up the account or signing the documents in question, let alone that she intended, ab initio or at any other time, to commit a money laundering offense.

The inferences upon which the jury relies to convict "must be more than speculation and conjecture to be reasonable," and where, as here, "the evidence . . . gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," a court "must reverse the conviction, as under these circumstances a reasonably jury <u>must necessarily entertain</u> a reasonable doubt." <u>United States v. Lovern</u>, 2009 U.S. App. LEXIS 29307, *31 (10th Cir. 2009) (emphasis in original), citing <u>United States v. Caseer</u>, 399 F.3d 828, 840 (6th Cir. 2005); see also <u>Ingram v. United States</u>, 360 U.S. 672, 680 (1959); <u>United States v. Dunmire</u>, 403 F.3d 722, 724 (10th Cir. 2005) ("While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable.") Put differently, where "the jury simply had no non-speculative reason to favor any one of these explanations over the others," a conviction must be reversed. <u>Lovern</u>, 2009 U.S. App. LEXIS 29307 at *31.

In <u>United States v. Lovern</u>, 2009 U.S. App. LEXIS 29307, *31 (10th Cir. 2009), the jury convicted a pharmacy computer technician, along with the pharmacist, of willfully conspiring to violate the Controlled Substances Act. The court "could not help but reverse" the conviction of the pharmacy computer technician after finding that there was no direct or circumstantial knowledge by which to reasonably infer that he was a knowing and willful participant in the conspiracy. <u>Id</u>. at *22. Without any direct evidence that the defendant "possessed the *mens rea* necessary to sustain a conviction," the government solely relied on inferential proof. <u>Id</u>. at *25. The government presented a quantum of evidence suggesting the defendant's generalized

knowledge of the existence of a conspiracy, but nothing that would have allowed a fact-finder to draw a reasonable inference to support the jury's verdict.  Id. at *31.

And so it is here:  Both the government's theory of guilt and the defendant's theory of innocence are amply supported by the record, and thus a verdict finding that defendant willfully participated in a criminal conspiracy with the specific intent to launder money is not supported by evidence capable of establishing proof beyond a reasonable doubt.

## C.    CONCLUSION

For the reasons set forth above, the undersigned respectfully requests this Court to bring the case against Angela Aguilar to an end by entering a judgment of acquittal on the one count of conviction.

DATED: May 24, 2011            Respectfully submitted,


                               By:    _____/s/_____
                                      Stephen G. Larson
                                      GIRARDI | KEESE
                                      Attorneys for Defendant
                                      ANGELA MARIA GOMEZ AGUILAR